THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CÁNDIDO RODRÍGUEZ MEDINA, Defendant and Appellant.

No. 13635. Argued April 1, 1949.—Decided May 13, 1949.

914

*Romany & Romany* for appellant. *Vicente Géigel Polanco, Attorney General,* and *J. Rivera Barreras, Prosecuting Attorney,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Cándido Rodríguez Medina was prosecuted in the District Court of Humacao for the offense of embezzlement. The essence of the information was that he had appropriated for himself the sum of $784.05 which Rafael Aguiar had given him in checks and telegraphic money orders with instructions to deposit it in the post office of Humacao in an envelope addressed to the Bank of Nova Scotia, Fajardo. After a trial, the jury returned a verdict of guilty and the court sentenced him to serve from two to four years in ·the penitentiary, at hard labor. Feeling aggrieved, he appealed to this Court.

As the first assignment of error he alleges in his brief, that the lower court did not have jurisdiction to hold the trial because the defendant was not duly represented by counsel and because, although the court appointed an attorney, it did so at the very moment of going on trial and without giving the attorney so appointed an opportunity to prepare his defense.

Upon the case being called to trial, the court asked the defendant if he had an attorney and the defendant answered that he appeared without counsel in order to petition and pray the court if he could waive that right because he wished to conduct his own defense. After putting some additional questions to him, the court deemed it advisable to appoint an attorney to defend him so that he could advise the defendant as to the proceedings of the case. The attorney appointed by the court went to trial and immediately raised a question of law in favor of the defendant which was overruled. Furthermore, during the trial he cross-examined the witnesses for The People and took exception as to certain decisions of the court. At the close of the evidence for the prosecution the counsel for defendant moved for a 5-minute recess in order to prepare his defense. The recess was granted and when the trial was resumed, he announced to the jury his theory of the case. Such are the facts as revealed by the record with respect to the appointment of the attorney and his intervention in the case.

This Court has repeatedly laid down the principle that in every felony case and even in certain misdemeanors the defendant has a right to be represented by counsel; that the court should inform him of that right; that if the defendant is financially unable to engage an attorney the court shall appoint one for him; and that the defendant may, of course, waive that right provided he does so voluntarily and in a competent and intelligent manner. *Ex parte Hernández Laureano,* 54 P.R.R. 396; *People* v. *Muriel,* 57 P.R.R. 896; *Dijols* v. *Lugo, Warden,* 58 P.R.R. 5; *Berríos* v. *Saldaña,* 59 P.R.R. 895; 149 A.L.R. 1403, 1409, and cases cited therein.

As we have seen, the wish of the defendant to conduct his own defense was not realized, and although it is true that the attorney appointed to represent him was so appointed at the very commencement of the trial, the attorney, far from asking the court to grant him time to talk over with the de-

fendant as to the facts of the case and his defense, immediately went to trial. Perhaps this was due to the fact that he was familiar with the case since he was the same attorney who four months previously had represented the defendant at the time of the arraignment. Under these circumstances we reach the conclusion that the appellant was duly represented by counsel. See *People* v. *Carmona*, 67 P.R.R. 266, 269, where in deciding a similar situation to that involved herein we said that "the substantial and constitutional rights of the accused were duly protected."

We take this opportunity to state that the best time to appoint an attorney for an insolvent defendant is at the time of his arraignment. Such an appointment, however, should not be made solely for that act—as happened in this case—but also for the purpose of representing the defendant at the arraignment, exchanging views with him and be informed of all the details of the case and prepare his defense so that on the day of the trial it may be held without any delay and the attorney be in the best conditions to assume the defense of the accused. Of course, if prior to the arraignment the defendant timely moves the court to appoint an attorney for his defense, such an appointment, if proper, should be made promptly provided the attorney appointed by the court represents the defendant in all the stages of the prosecution and until judgment is rendered by the court.

■ The defendant likewise argues that the lower court erred in not permitting Luis Gómez Fuentes to testify as to the conversation had between Ramón M. Virella the witness of the prosecuting attorney, and the defendant. Virella testified that he is a detective and that when he received instructions from his officer to arrest Cándido Rodríguez Medina he looked for him in San Juan, Cayey, and Juncos but did not find him; that while he was at the police station in Humacao the sister of Rodríguez Medina appeared and delivered him to the police; that when he was taking him to

the district jail, the defendant told him: "I shall plead guilty and then I shall be entitled to probation."

At the close of the evidence for the prosecution and after the theory of the defense was announced, Luis Gómez Fuentes, the first witness for the defendant, was called to the witness stand. He stated that he had met Rodríguez Medina on the day that he was confined in jail; that he was sent with detective Virella. Upon being asked whether any conversation took place between Virella and the defendant, the prosecuting attorney objected to the witness answering the question. The defense then announced to the court that it had called Gómez in order to impeach the testimony of policeman Virella but later it corrected and said that it had called him to testify as to defendant's statements in the presence of Virella in the district jail, adding that "If it is the same as what Virella stated, it ratifies Virella." The district attorney again objected because the testimony was immaterial and the court sustained him, whereupon the defendant took an exception. Undoubtedly, the proper thing would have been for the court to permit witness Gómez to testify as to the defendant's statements in the district jail before the witness and Virella. Perhaps he might have testified exactly the same as Virella. Perhaps not. But in any event there was no fundamental reason for excluding his testimony. However, since the defendant did not inform the court as to the contents of Gómez' testimony, nor whether it was material, and having admitted, on the other hand, that Gómez might ratify what Virella had said, the error committed does no justify the reversal of the judgment.

■ Appellant also alleges that the lower court erred in permitting the witness Virella to tell the jury that he wished to investigate whether any person had advised the defendant to commit the offense charged against him. We do not see that this error was committed, inasmuch as the witness also stated that when he questioned the defendant on this point, the latter admitted that "he had done it alone and that no

one had advised him to do it and that nobody else was involved in this case," and this statement of the defendant was clearly admissible in evidence. *People* v. *Rodríguez*, 65 P.R.R. 497.

██ While Virella was being cross-examined, the district attorney stated that the defendant proposed to impeach with his questions the acquaintance of the witness with the defendant. We do not see either how this could be prejudicial to the appellant, inasmuch as the cross-examination not only clearly reveals that such was the situation, but also that the defendant wished to show that Virella was prejudiced against him. *Cf. People* v. *Ojeda*, 66 P.R.R. 399, 400.

██ When defendant's sister was called to the witness stand the district attorney objected because she had been in the courtroom all day and had heard the testimony of all the witnesses who had been previously called; the defense immediately stated that she would not testify as to the facts, but merely in the sense that when she heard that an order of arrest had been issued against her brother, and he arrived at her house she took him to police headquarters. The court held that since Virella had testified as to this particular, the statements of defendant's sister would be immaterial and irrelevant.

The fact that a witness may have stayed in the courtroom during the trial and heard the testimony of other persons, is no ground, by itself, for excluding the testimony of the former. *People* v. *Silva*, 48 P.R.R. 337. This is a question which rather falls within the sound discretion of the trial court. Nevertheless, when in a case as the one at bar, the court is informed that the witness is not familiar with the facts and that he shall only testify as to a particular point in connection with which another person has already testified, his testimony is corroborative. It can not be decided in such case that the court abused its discretion and that, therefore, in so acting it committed a reversible error. *People* v. *Rivera*, 67 P.R.R. 179, 187.

The court did not sum up the case to the jury. The defendant insists that this constitutes an error and cites *People* v. *Lebrón*, 61 P.R.R. 634. After both parties presented their evidence, they stated that they did not wish to inform orally. The district attorney then invited the defendant to move the court not to make a summary of the evidence to the jury and defendant's attorney answered: "We agree." In view of this fact the court did not sum up the case to the jury.

It is true that pursuant to subdivision 8 of § 233 of the Code of Criminal Procedure, the court has the duty to sum up the evidence to the jury, but when the defendant by express stipulation of the parties waives this right, he has no reason to complain. *People* v. *Valentín*, 63 P.R.R. 756, 762. Notwithstanding this, although it is stipulated that no summary of the evidence be made to the jury, and although it does not constitute an error to agree thereto, *the courts, in furtherance of justice, should reject such stipulation and always make the summary required by law.* It is convenient to repeat here what we said in *People* v. *Lebrón, supra,* at p. 647, to wit:

"The practice of the judge omitting to sum up the case to the jury is not only contrary to the express provisions of the law, but is also prejudicial to the ends of justice. The reason why the evidence should be summed up, as the transcribed section states, is that the essential facts adduced by both parties should be pointed out to the jury. In other words, to sift the evidence, thus preventing the jury from being led into error or confusion by taking into consideration facts immaterial to the decision of the case. What is more, in his instructions the judge ought not to read the bare letter of the law. The jury is comprised of persons not learned in the law, and to read to them the law in this way is the equivalent of placing in their hands the statute in order that they may decide the case in accordance with the interpretation which they may deem most fitting. For that reason the better practice is, after summing up, to give the jury the different conclusions at which, in weighing the evidence, they may arrive and to indicate to them the verdict that should

be given in relation to each one of those conclusions.   In that way the duties of the jury are circumscribed to their true limits, that is, the determination of questions of fact, and the situation is thereby avoided of the jury being in agreement as to the facts and erring in applying the law."

The judgment appealed from will be affirmed.